## THE EROS.

(Circuit Court of Appeals, Second Circuit. February 20, 1918. On Motion for Reargument, March 30, 1918.)

### No. 158.

1. SHIPPING ⬦➡39—CHARTERS—CONSTRUCTION.

A provision in a charter party that it shall be construed according to the law of a particular country is valid, but merely supplies the rule of construction, and does not limit the remedies of the parties.

2. CONTRACTS ⬦➡127(2)—EFFECT OF ARBITRATION CLAUSE.

Under the law of the American admiralty courts, a provision in a charter party that any dispute arising shall be submitted to arbitration does not deprive the parties of the right to appeal to the courts.

3. ADMIRALTY ⬦➡124—COSTS—FEES OF MARSHAL.

Under Rev. St. § 829 (Comp. St. 1916, § 1386), allowing the marshal a smaller commission where a decree in admiralty is settled without a sale, the marshal is entitled to have such reduced commission included in the decree as part of the costs.

4. SHIPPING ⬦➡51—CHARTER—BREACH.

Refusal of master of a French yacht in New York, under charter to an American, under instructions from the owner, to proceed with the charter on declaration of war between France and Germany, on the ground that the crew were subject to call for the French army and the yacht to requisition by that government, *held* an unjustified breach of the charter, where the vessel was not requisitioned, and only about half the crew taken, and charterer offered to pay for substitutes.

### On Motion for Reargument.

5. SHIPPING ⬦➡58(3)—BREACH OF CHARTER—DAMAGES.

Measure of damages for breach by the owner of a charter for a pleasure yacht *held* the extra cost of procuring another vessel, with the incidental expense of transfer from one to the other.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Eugene Higgins against the yacht Eros; Julian H. Everard, master, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinions below, see 241 Fed. 186, and 245 Fed. 814.

Kirlin, Woolsey & Hickox, of New York City (Charles Steward Davison, of New York City, of counsel), for appellant.

Selden Bacon, of New York City, for appellee.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

PER CURIAM. [1, 2] We concur in Judge Veeder's finding of law that the charter is to be construed by English law, and that the provision as to arbitration is not enforceable in our courts. We decline to consider the correctness of the damages awarded. That matter was formally and properly referred to the commissioner, who made a report in accordance with a stipulation as to facts executed between the

⬦➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

parties, and no exceptions to that report were ever filed. The correctness of the commissioner's conclusion was never presented to the District Court, and is not before us in such shape as to require consideration.

[3] The clerk refused to include in the libelant's bill of costs the marshal's poundage, calculated at the lesser rate allowed on a settlement under section 829, subd. 15, Rev. St. U. S. (Comp. St. 1916, § 1386), and upon exceptions the District Judge overruled the clerk. It seems to us that the court made a very reasonable disposition for the protection of the marshal. If the case be settled by the parties, this poundage will have to be paid before satisfaction of the decree. On the other hand, if the libelant has to collect by execution, the marshal will tax his full poundage and give credit for the amount allowed in the decree as upon a settlement.

[4] This leaves but two questions for brief consideration: (1) Was there a refusal to perform the contract of charter party on the part of the claimant or his agent? and (2) if there was such refusal, was the breach excused by the outbreak of war between France and Germany? The libel alleged, and the lower court definitely found, that on August 5, 1914, the master of the Eros, under instructions of her owner, refused to recognize the charterer's orders, and withdrew the yacht from charterer's control. We have examined the evidence carefully; its legal effect is fairly stated in the opinion of Judge Veeder, and, after making every allowance for the disadvantage under which claimant labored in having a breach of charter party spelled out of the conversation of a French ship captain, speaking in English, with an American lawyer, we are compelled to accept the finding of the lower court.

Whether the outbreak of war excused this breach is a matter which a majority of this court consider disposed of by the actual facts of this case rather than by the application of any inexorable rule of law. The charter party contains no proviso excusing nonperformance caused by "acts of princes" or other matters equivalent to declared hostilities. It is thought that the recent ruling in The Kronprinzessin Cecilie, 244 U. S. 12, 37 Sup. Ct. 490, 61 L. Ed. 960, has mitigated the rigidity of contract sometimes inferred from the absence of the "restraint of princes" clause.

Applying that decision to this case, the majority hold that, if the French consul in New York had actually taken by order or requisition on the yacht master all, or substantially all, of his crew, that governmental act would have been an excuse for declination to further perform the terms of charter. Such, however, was not the fact; a considerable number of the crew were taken, and did go to join the French military forces. We find that, before the charterer had finally committed himself to a new fixture, it had become possible to put the yacht at his disposition so far as he had then indicated. This the yacht master made no effort to do, and his conduct was entirely approved by the claimant herein, who not only ratified his captain's substantial refusal to perform, but added the condition (wholly inadmissible) that the

charterer should only use the yacht during the pendency of war within the territorial waters of the United States.

Therefore the decree must be affirmed, with interest and costs.

## On Motion for Reargument.

PER CURIAM. [5] Having fully considered the record in respect of damages, no reason is seen to disturb the conclusion reached below. Though a yacht is used for pleasure only, a contract for her use is as much a property right as the hiring of a cargo boat, and a breach of contract entails the same consequences. Our decision in Sanders v. Munson, 74 Fed. 649, 20 C. C. A. 581, is controlling and was followed.

That we have now disposed of this question as though it had been properly raised does not signify any change of view as to the necessity of excepting to a commissioner's report and presenting to the trial court any errors alleged to have occurred in assessing damages. But in this instance, as appellee did not in brief or otherwise insist on the point, we have deemed it waived, and on the merits deny any relief in respect of amount.