### FOX FILM CORPORATION v. C. & M. AMUSEMENT CO.
### No. 2926.

District Court, S. D. Ohio, E. D.
March 28, 1932.

Morton, Irvine, Blanchard & Touvelle, of Columbus, Ohio, for plaintiff.

R. M. Noll and Clarence C. Middleswart, both of Marietta, Ohio, for defendant.

HOUGH, District Judge.

The plaintiff sues the defendant for breach of two written contracts, known in the film trade as "standard exhibition contracts." The contracts were in process of perform-

ance, the film company furnishing the films periodically under the terms of the contracts, and the amusement company or exhibitor receiving the films, exhibiting the same in its theaters, and paying the contract price therefor.

The standard exhibition contract such as is involved in this action was tested for its legality in the United States District Court for the Southern District of New York, where it was determined that that type of contract was illegal, in restraint of trade under the Sherman Anti-Trust Act (15 USCA § 1 et seq.). Thereupon the defendant gave notice of its intention to disregard the contracts and breach the same. This action is one for damages for the recovery of the contract prices of the unperformed and executory portions of the contracts.

To plaintiff's petition the defendant files its answer, admitting the execution and part performance of the contracts and the breach, and defends on the ground that the contracts have been held to be illegal and in restraint of trade, particularly as the same applies to section 18 of the contracts, relating to its provisions in reference to arbitration. To this answer the plaintiff has filed its general demurrer, which raises the question now submitted to the court.

The defendant contends that the contracts upon which action is brought have been determined to be illegal and void, and therefore that its promise of further performance is unenforceable. The position of the plaintiff is that, although it concedes that paragraph or section 18 of these contracts has been determined by the courts to be and is illegal and void, still the contract is divisible, and the illegal section is separable from the remainder of the contract, and that the contracts with that section eliminated are legal and enforceable, and that the furnishing of films, exhibition of the same, and the payment of the contract price therefor, is collateral and independent of any contractual provisions that are the basis of illegality.

The standard exhibition contract was one agreed to between the leading film producers, under a compact that prevented the exhibitor from exhibiting the films of the producers, except after executing the standard contract. The United States government in 1929 brought a proceeding in equity in the District Court for the Southern District of New York, for the purpose of determining the acts of the distributors in relation to their compact, and for testing the standard contract in relation to the federal anti-trust laws. The court in that case determined that there had been a conspiracy in restraint of trade, and that the standard exhibition contract was the evidence of that conspiracy. U. S. v. Paramount Famous Lasky Corp. et al. (D. C.) 34 F.(2d) 984, 989. The court in the course of its opinion said: "By agreement of these distributors exhibitors who were not represented in the adoption of the uniform contracts have been constrained to accept their terms regardless of their wishes, and by the compulsory system of arbitration, sanctioned and enforced by the collective action of the distributors, have been constrained to perform the contractual obligations thus assumed. In fairness it cannot be said that the restraint imposed upon these exhibitors is voluntary because they accept and agree to be bound by the contracts. They can have none other, because the defendants have agreed that they shall not; and, unless something more than the mere acceptance of all they can get is shown, they must be said to have acted under an involuntary restraint, imposed and continued by the defendants to the end that the contracts shall be signed and their terms obeyed. That such coercive restraint upon the commercial freedom of an exhibitor, who was neither represented nor consulted with reference to the agreement to adopt the standard form of contract, is undue and unreasonable, both at common law and under the Sherman Act, cannot be doubted. * * * Nothing that has been said should be taken in derogation of the right of trade or commercial groups, or of traders generally, to voluntarily impose upon themselves standard forms of agreement which do not unduly restrict competition and thus restrain trade, or to agree that all controversies arising between them shall be settled by arbitration. Such agreements dealing only with the rights of those who execute and intend to be bound by them are normal and usual, and are proper instruments in the lawful conduct of trade. It is only when such agreements are sought to be imposed upon others, regardless of their wishes, by coercive combinations having the power to say 'Take what is offered or get nothing,' that they become illegal."

This case was appealed to the United States Supreme Court, and by that court affirmed. Paramount Famous Lasky Corp. et al. v. U. S., 282 U. S. 30, 51 S. Ct. 42, 45, 75 L. Ed. 145.

It is urged in argument that, because the decree in the District Court made use of language which permitted the motion picture

producers and distributors to enforce by any lawful means, including legal action in the courts, any contractual obligations imposed by the contract, and that the Supreme Court in affirming the case used the phrase, "the challenged decree must be affirmed," the correct interpretation of the force and effect of these decisions is that the illegality of the arbitration provisions is distinct and separable from the remainder of the contract, and that, by eliminating and disregarding those provisions, there remains a perfectly legal and enforceable contract.

Since the decision in the New York case, the standard exhibition contract has been before the courts, both federal and state, a considerable number of times, and, while the issues have arisen in somewhat different ways, yet the conclusions reached by the court are not at all in accord.

In the Western District of Virginia, the District Court sustained defendant's demurrer to the petition of the film company suing for damages for breach of the standard exhibition contract. The Court of Appeals of the Fourth District reversed this case, holding that the arbitration clause was separable and divisible from the remainder of the contract. Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A.) 49 F.(2d) 64. To the same effect are Columbia Pictures Corp. v. Bi-Metallic Inv. Co., decided by the District Court of Colorado, 42 F.(2d) 873; Fox Film Corp. v. Carrie Aprile et al., S. C. N. Y. (Erie County)[1]; Gorris et al. v. Pathe Exchange, Inc., et al. (No. 2358) Court of Common Pleas, Allegheny County, Pa.

This court is unable to accept the theory upon which these decisions seem to rest, that is, that the standard contract is divisible and separable, to the end that, after expunging the illegal portion, a party to it may be held to answer in damages to the amount of the unperformed contract price.

From the record of the New York case, supra, we are apprized that the government in a legal suit inquired into what seemed to be an unlawful combination, and secured judicial determination that such was the case, based upon adequate evidence, to wit, the standard contract itself—the same contract to which the defendant in this case is not only a privy, but a party. The exhibitors, the defendant here is one, were found to have been compelled to subscribe to the standard contract in order to secure films for exhibition purposes. Their position was one of invol-

untary action rather than voluntary. They were victims of a coercion condemned by the law.

The fraudulent and illegal elements permeating these contracts must, it seems to the court, taint and void the entire contract so far as it may affect or bind one who through the medium of coercion has become a party to it.

The defendant in this case does not find itself in the collateral position, as was the case in the line of decisions wherein the principle was laid down that one purchasing and receiving goods and afterwards learning that the seller was a party to an illegal combination and refused to pay for them could avoid the contract. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486; Small Co. v. Lemborn & Co., 267 U. S. 248.

After having the value and benefit of the purchased goods, the courts granted protection to the seller, notwithstanding his illegal situation, on the basis that otherwise the buyer would receive something for nothing.

The defendant herein, at the time of the breach of the contracts, owed the plaintiff nothing. The contracts then were executed on the part of the defendant up to that time, and the unperformed portions were executory as to both parties. The defendant's obligation in this case finds its only support in a contract void as to it. With the contract as the basis of the cause of action removed from consideration, the obligation depending upon it therefore vanishes for lack of support.

Like conclusions have been reached under similar state of facts. Recently, the Supreme Court of Idaho in Fox Film Corporation v. Tri-State Theatres, 6 P.(2d) 135, Jan. 22, 1932, held the standard form of contract to be unenforceable in an action for damages. This was an affirmance of the decision of the County District Court. In the Majestic Theatre, Inc., v. United Artists Corp. et al., 43 F.(2d) 991, in the District Court of Connecticut, a different issue was presented, but similar conclusions were reached. Compare also Vitagraph, Inc., v. Third Street Theater Co., Common Pleas Court of Northampton County, Pa., decided May 11, 1931; Vitagraph, Inc., v. Theatre Realty Co., Inc. (U. S. D. C., Eastern District of Pa.) 50 F.(2d) 907. This announcement will compel an entry overruling plaintiff's demurrer.

---

[1] Memorandum decision.