### STATHATOS v. ARNOLD BERNSTEIN STEAMSHIP CORPORATION.
### The MARIA STATHATOS.

United States District Court
S. D. New York.
Jan. 21, 1950.

Reid, Cunningham & Freehill, New York City (Nicholas J. Healy, 3rd, New York City, of counsel), proctors for petitioners.

Hunt, Hill & Betts, New York City (John W. Crandall, New York City, Robert M. Donohue, New York City, of counsel), proctors for respondent.

IRVING R. KAUFMAN, District Judge.

The Court has before it a petition to compel. arbitration which requests as belief that the Court appoint an arbitrator pursuant to Section 5 of the United States Arbitration Act, Title 9 U.S.C.A., and that the Court grant such other and further relief as may seem just and proper. Though Section 4 of the Act is not specifically mentioned, the petition clearly shows that petitioners are requesting firstly, an order directing that arbitration proceed, and secondly, if arbitration is deemed proper, that an arbitrator be appointed because of respondent's unwillingness to appoint one.

Section 4 provides, in substance, that a party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement may petition the appropriate court for an order directing the arbitration to proceed in the manner provided for in the agreement. Section 5 provides, in part, that if a party fails to avail himself of the method of naming an arbitrator provided for in an arbitration agreement, the court shall name an arbitrator, upon the application of a party to the controversy.

The petitioners are the owners of the steamship Maria Stathatos. By written charter dated at New York on April 14, 1948, the respondent agreed to hire the ship for "as many consecutive voyages with full cargoes of coal as vessel can perform, tendering ready at loading port for the last trip not later than June 30, 1949, it being understood not more than nine consecutive trips to be performed in any case." The vessel tendered for loading under the charter and made one voyage to Belgium. Upon completion thereof, and on or about June 4, 1948, the respondent informed the petitioners that due to some circumstances it had "no further use for the S/S 'Maria Stathatos'".

The charter agreement contained an arbitration clause reading as follows: "3. * * * If any dispute or difference should arise under this Charter, same to be referred to three parties in the City of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or any two of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court."

The sole issue tendered by the petition and answer is whether or not the controversy between the parties is a dispute arising "under this charter" within the meaning of clause 3, supra. Respondent claims that he cancelled or repudiated the entire charter and that therefore the arbitration clause is not applicable under the doctrine of The Atlanten, 1920, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586. The authority of The Atlanten has been questioned since the passage of the United States Arbitration Act. See In re Utility Oil Corporation, 2 Cir., 1934, 69 F.2d 524, certiorari denied, 1934, 292 U.S. 655, 54 S.Ct. 866, 78 L.Ed. 1504; Petition of Pahlberg, D.C.S. D.N.Y.1942, 43 F.Supp. 761, 763, appeal dismissed, 2 Cir., 1942, 131 F.2d 968. In any event that case turned on the construction of the particular arbitration clause involved in the case which was markedly different from that before the Court in this case. Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, 992. In The Atlanten the owner of the steamship, before any voyage or performance was made, refused to perform and attempted to use the arbitration clause as a bar to suit. The arbitration clause provided that the Captain of the ship should choose an arbitrator. The Supreme Court said that the refusal to perform was not a dispute of the kind referred to in the arbitration clause because "the with-

drawal was before the voyage began and it is absurd to suppose that the captain, who might be anywhere in the world, was to be looked up and to pick an arbitrator in such a case." 252 U.S. at page 316, 40 S.Ct. at page 333, 64 L.Ed. 586.

In the instant case there is no question of repudiation before entering upon performance, since the petitioner did complete one voyage before the charter was terminated. Furthermore, the Court of Appeals in this Circuit looks to the wording of the arbitration clause rather than the time of breach, and has compelled arbitration in a situation where the charter was repudiated even before being signed, since the charter had been agreed to and the arbitration clause applied to disputes "of any nature whatsoever." Kulukundis Shipping Co. v. Amtorg Trading Corp., supra [126 F.2d 980].

The question therefore narrows down to an interpretation of the wording of the arbitration clause, especially of the words "under this charter". Respondent claims that the dispute was not under the charter since the charter was terminated. In the case of In re Utility Oil Corporation, supra, the charterer refused further cargoes nine months before the expiration date of the charter. The charter contained an arbitration clause reading: "Any dispute arising during performance of this Charter Party shall be settled by arbitration * * *." The Court of Appeals of this Circuit compelled arbitration, stating 69 F.2d at page 526: "A dispute arose under the contract, for here one of the parties, in the opinion of the other, failed to perform. Arbitration clauses are designed to provide remedies for such situations. The fact that the appellant did not continue performance after breach by the appellee did not deprive it of the right to rely on the arbitration clause."

This Court fails to see any substantial distinction between "during performance of this Charter" and "under this charter", and in accordance with the trend toward greater liberality in upholding arbitration agreements entered into voluntarily by the parties, must grant the petition to compel arbitration in this case.

If the Court had any doubt on the question, it was dispelled by the opinion of Judge Augustus N. Hand in the most recent decision of the Court of Appeals of this Circuit, In re Pahlberg Petition, supra. In that opinion the Court stated its approval of the decision of the House of Lords under the British Arbitration Act in the case of Heyman v. Darwins, [1942] A.C. 356, namely that under a clause providing for arbitration of "any dispute * * * between the parties * * * in respect of this agreement or any of the provisions herein contained or anything arising hereout * * *" [131 F.2d 970] arbitration may be compelled except as to the issue whether the contract containing the clause was ever made or was void for fraud or other illegality.

Judge Hand also quoted with approval the following language from the Heyman case:

"An arbitration clause is a written submission, agreed to by the parties to the contract, and, like other written submissions to arbitration, must be construed according to its language and in the light of the circumstances in which it is made. If the dispute is whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies that he has ever entered into the contract is thereby denying that he has ever joined in the submission. Similarly, if one party to the alleged contract is contending that it is void ab initio (because, for example, the making of such a contract is illegal), the arbitration clause cannot operate, for on this view the clause itself also is void. But, in a situation where the parties are at one in asserting that they entered into a binding contract, but a difference has arisen between them whether there has been a breach of one side or the other, or whether circumstances have arisen which have discharged one or both parties from further performance, such differences should be regarded as differences which have arisen 'in respect of,' or 'with regard to,' or 'under' the contract, and an arbitration clause which uses these, or similar, expressions should be construed ac-

cordingly." [1942] A.C. 356, 366. (emphasis added)

The exact language used in the arbitration clause in question appears in the above quotation, and indicates that there is no merit to respondent's contention that arbitration should not be compelled.

Petition to compel arbitration granted. If respondent does not appoint or designate an arbitrator within ten days from the date of the filing of this decision, the petitioner may apply to this Court and an arbitrator will be appointed by the Court in accordance with this opinion. Settle order.